Good morning, Your Honors. Nick Morgan from Zakharov Morgan on behalf of Appellants and Defendants in the Underlying Action, Junzo and Paul Suzuki. The Suzuki's seek reversal of the District Court's September 18, 2014 preliminary injunction order, specifically that portion of the order which enjoins the Suzuki's from selling or transferring any assets with an allowance for living expenses and legal fees. The asset freeze is overbroad as to the assets that were frozen, the people who were impacted or benefited by the asset freeze, and as to the time frame on which the asset freeze is based. And I'll take each of those in turn, hopefully saving myself enough time for some rebuttal. The order freezes all of the Suzuki's assets, again with the allowance I mentioned for legal fees and living expenses. We know from the Supreme Court's decision in Grupo Mexicano that there are limits to a District Court's ability to freeze assets. In Grupo Mexicano, the Supreme Court made it clear that there can be no asset freeze to prevent transferring assets in which no lien or equitable interest is claimed. Now, in this case, perhaps in recognition of that limitation, the plaintiffs sought an asset freeze based on their equitable claim for constructive trust, not for an asset freeze for recovery of their legal damages for their legal claims. And, in fact, when the Court issued its preliminary injunction, it seemed to articulate the correct standard. I'm reading from the Court's preliminary injunction or the preamble that leads up to the actual asset freeze language, and that's at the excerpt of record, page 15. The District Court said, while the Court does not have the authority to freeze assets where the only relief the plaintiffs seek is legal monetary damages, citing to the Ninth Circuit's Couturier case, an asset freeze is properly awarded where the plaintiffs have shown they have an equitable interest and the assets sought to be frozen. Citing to a District Court case in Florida, the Court goes on to say, Accordingly, an award of injunctive relief freezing the Suzuki's assets that are traceable to the commissions they received from MRI is proper. The Court seems to articulate the correct standard, but then on the very next page it imposes an asset freeze over all assets, any assets of the Suzuki's, regardless of whether they are traceable to the commissions. And I should back up and give a little explanation about the plaintiffs' constructive trust theory. MRI was an enterprise in Las Vegas that was operated by people other than the Suzuki's. The plaintiffs have alleged that they committed securities fraud and that some of the proceeds from that securities fraud were transferred to the Suzuki's in the form of sales commissions. And the plaintiffs contend that it's those sales commissions that do not belong to the Suzuki's. Rather, the plaintiffs say they should be subject to a constructive trust. So those are the assets that are the subject of the constructive trust plan. Kennedy, So the allegation is that they should be subject to this constructive trust on the basis that they're their – these are their commissions. Are there any allegations that they participated or that they are the ones that made misstatements or is it solely because they received commissions, ergo, we should have a constructive trust in those monies? To be sure, the plaintiffs do allege that at some point in time the Suzuki's made misrepresentations and the plaintiffs allege that the Suzuki's committed securities fraud. And they have legal claims to pursue those allegations. But their constructive trust claims don't go to that issue. Their constructive trust claims are, and in fact, they made it clear in the preliminary injunction motion that the Suzuki's participation in the fraud was irrelevant to their constructive trust argument, even if the Suzuki's had not been. Yes, but that would have some bearing on whether they're good-faith purchasers, wouldn't it? Yes, it would. And that gets to a different argument that I have relating to the point in time at which the district court found the Suzuki's had knowledge of the underlying fraud. So the district court's order froze all of the Suzuki's assets when the proper legal standard and the limitation imposed that should have been imposed is only those assets that are traceable to the commissions that they received from the MRI enterprise. And how much is that? Well, we don't know, Your Honor. There's no evidence in the record, and the plaintiffs failed to meet their burden on that point. But there is a – there is discussion in the record of certain assets. So what evidence did you put on indicating that the bulk of the assets were not traceable or were not traceable to commissions? I mean, it seems to me that the district court thought that the bulk of the assets were commissions and therefore traceable. So I'm just asking about the state of the record on it from both your point and from the plaintiff's point of view. Right. So first I should say that it is the plaintiff's burden to put on that evidence. But there is evidence in the record that there – that the assets existed outside of anything that could be traced to the MRI fraud. One such asset is a piece of real property purchased in 1987 by the Suzuki's, nearly a decade before the MRI enterprise even got off the ground. So there can be no suggestion that that asset was purchased with proceeds from the MRI fraud. In fact, the plaintiffs didn't suggest that it was. And yet that asset, owned by the Suzuki's today, comes within the any assets asset freeze. So there is evidence in the record, Your Honor, of assets that couldn't possibly be part of the constructive trust, and yet that asset's frozen. If I could turn to the – the number of people who it appears the district court was acting on behalf of. This case is brought on behalf of 25 individual plaintiffs, investors, in the MRI scheme. There – despite this fact that this case was brought in 2013, the plaintiffs have never moved to certify the putative class on which they proceed. So today, and at the point in time of the preliminary injunction, there were 25 plaintiffs at issue. Those 25 plaintiffs, according to their own evidence, invested slightly more than $3 million in the MRI scheme. Of that $3 million, they contend that some portion of that was paid in the form of commissions to the Suzuki's, and that that portion should be subject to the constructive trust. The problem for both the plaintiffs and the district court is there was no evidence put on about how much of the $3 million was in the form of commissions to the Suzuki's, whether any of the $3 million went to the Suzuki's in the form of commissions. But we also don't know how much the assets are worth, and so – and so the – if you're saying that – I have a hard time – I don't know whether the assets are enough there to cover what – even the smaller part that under their theory would have come from the commissions, because we don't know anything about the assets, and your – your clients won't reveal anything about their assets. There's no discovery here yet. That's true. There is no discovery yet, Your Honor. But the process should take place in the proper sequence. In other words, the court should but did not determine what is the extent, the scope of the constructive trust. What is the amount that's at issue here that can be properly frozen? That never happened. We don't know. Of the $3 million these 25 investors invested, we don't know what portion of that is attributable to sales commissions received by my clients. Well, they claim, do they not, that your clients received $22 million in total sales commissions, true? Yeah. All right. That's correct, but that's $22 million, which, by the way, we can test, but that $22 million is sales commissions attributable to all of the investors over the entire class, a class which has not been certified. Right. No, I take your point on that, but I think the issue is how much, what assets your clients still have from the sales commissions. And if the district court reasonably believed that $3 million was not present, in other words, your clients don't have enough to pay the amount that's in the constructive trust, what's wrong with the preliminary injunction? Well, first of all, Your Honor, the $3 million is the amount the plaintiffs invested, not the amount that was received by our clients as sales commissions. Right. So we wouldn't constructively impose a trust over the $3 million. And my point, Your Honor, is the district court never made the attempt to ascertain what the size of the constructive trust was. That has to happen first before you can determine whether or not there are sufficient assets to satisfy that. Certainly, if the court had said— So are there sufficient assets? I don't know what the size of the constructive trust is, Your Honor. No. My question is different. Do your clients have sufficient assets? If, in fact, that the amount of the constructive trust is properly $3 million, do your clients have sufficient assets to pay that? I don't know the answer to that question, Your Honor. There are real property assets, the value of which has not been entertained. I don't know. But I do know that the number that a properly constructed asset freeze should preserve for satisfaction of a constructive trust theory is not $3 million. I know that's not correct. It's some subset of $3 million, perhaps zero. And that's the inquiry that needs to take place first, and then you can determine whether or not there are sufficient assets to satisfy that judgment. And that inquiry never happened. Let me move on. I see I'm running short on time. Let me talk a little bit about time period. So in order to be entitled to a preliminary injunction, one of the things that the movements must show is that they are they have a likelihood of prevailing on the merits. And specifically with regard to an asset freeze, in this context, they need to show that they have a likelihood of success in establishing that a constructive trust existed. And here, that means that they must have shown or must show that the Suzuki's had actual or constructive notice of the underlying fraud at MRI, which gets to Your Honor's point that we started out with. Did they have notice? Did they participate in the underlying fraud? The district court comes close and ascertains, picks a point in time when the judge concluded that the Suzuki's may have had actual or constructive notice of the underlying fraud, and that date is April of 2012, a date during which MRI faxed several faxes over to Japan. Now, we disagree on the import of those faxes, but taking the district court's conclusion at face value that that's the point in time when the Suzuki's had notice of the underlying fraud, the constructive trust should have been so limited. And the date is important because the evidence submitted by the plaintiffs themselves shows that the amount of commissions received by the Suzuki's or sent to the Suzuki's after that date in time, April of 2012, is about $430,000, $450,000. And so the asset freeze didn't limit itself to assets necessary to satisfy that amount. Rather, it seems to reach back in time and grab assets and freeze assets like the real property that was purchased in 1987 that couldn't possibly be the subject of a constructive trust. Your Honor, reserve? Yes, please. Thank you. Thank you very much, Your Honors. I'm Robert Cohen, and I'm for the plaintiff's appellees. I know it's a cliché to start out with when you read in so many cases, but I think it applies here that this is a case that really does begin and end with   a deferential standard, which we didn't hear from. That standard of review is, in many cases, articulated differently, but it's one of the most deferential standards there are. The question is, is there evidence in the record under that deferential standard that supports what the district court did? And clearly, there is. There is a rule that says asset freezes should not issue as a matter of course, but there's an exception to that rule that if there is evidence of dissipation of assets combined with a likelihood of fraud, with evidence of fraud, then an asset freeze is appropriate. Here, there was, in fact, evidence on the record that supported the conclusion that the plaintiffs are likely to prevail on the merits. There's also evidence on the record, as the district court found, that within two weeks of the Japanese government's findings of the underlying fraud of the existence of this Ponzi scheme, the Suzuki's were undertaking rapid efforts to freeze their assets. And there's evidence in the record that supports what the district court found to be in this case. The upshot is that a preliminary injunction freezing their assets is appropriate under every case that is cited on either side in any of the briefs in this case. Kennedy. Counsel, was the Japanese action finding a fraud as to the corporate entity and its main fellow and the Suzuki's? I know it froze their assets, like these assets are frozen here, but were they the ones that were found to be fraudulent, or did they just have their assets frozen like you're trying to freeze them here? Fair question. The Japanese government made a finding, an announcement, like a press release, in combination with taking away the Suzuki's and MRI's, the corporate entities, license to do business in Japan. There was no specific finding at that time of the Suzuki's personally being liable. However, the Japanese government did take away their license, and subsequently, I can't point to the exact time, but within a couple of months, I think, there were pronouncements by Japanese courts. There's clearly evidence that this main company... MRI. MRI and their head person. Their main guy at Fujinaga. That's right. It's running the whole thing. Participated in fraud and had a fraudulent scheme. Here, though, you need to show that these defendants, that there's something to show that should prevail as to these defendants, not MRI, being involved in that fraud. And what is that evidence of their involvement, not MRI? Right. The evidence of the Suzuki's specific involvement in this fraud is, number one, not in order of importance, but number one, their high-level placement within the MRI corporate structure. The two Suzuki's are the, not virtual, the absolute face of MRI. So Ford was guilty of Watergate? That's part of it. That's, yeah, exactly. What do you mean? I mean, what, why? Just because, what is it about their position and the facts that you showed about their position or how that position operates, other than you say they have a high level and it shows that they did something fraudulent? Right. More concrete. The reason I bring up their high level is because it's not just kind of high in the corporate structure. They're the main guys of the whole organization. They are MRI to Japan. They're the ones who made all, literally all, literally all of the representations to the Japanese victims. These Suzuki's are the ones who spoke to them, who took them to Las Vegas countless times, touting the virtues of the MRI investment. That's one thing. And that's what you, what did you show? So you showed that they made false representations? Constantly over a period of many, many years. And not only that. Given those facts, the Suzuki's arguments to, well, in this case, is that, okay, we might have been high in the company, we might have made all these representations, but we were only parroting what Fujinaga told us, what MRI told us. Okay. They can claim that. I think it seems a very thin thing to claim. But if you want concrete evidence of their actual knowledge, the district court, in its order, points to some of them. Number one is the faxes exchanged in April 2012, putting them on definite notice that there's something seriously wrong. You've answered my question. I don't want to take you away from it. And the other one is evidence that they were at meetings, and these were the subject of sound recordings by the SEC in its case. And those sound recordings reveal that the Suzuki's were planning on what sorts of misrepresentations to make to the Japanese government. And those representations appear in the record. And they show that the Suzuki's were actively trying to hide the fact that MRI is purchasing affiliate companies, pharmaceutical companies, et cetera, which contradicts their representations to the victims, that all they do is invest in these medical account receivables. It shows it. It shows they knew that they were making misrepresentations. That's evidence. Let me ask a different question. Would you agree that the amount that is properly subject of a constructive trust is not necessarily coextensive with the amount you seek in damages? Here's what I think. I would not. I think it doesn't matter. And I want to answer it clearly. For one, the straight answer is I don't believe it matters, because what's really at issue in this case is not just $22 million, but hundreds of millions of dollars. That's what's at issue in this case. Well, that's true, but it's not part of the case yet. You don't have a certified class. So we have to focus on your individual plaintiffs. Right. Correct? And their claims are about $3 million, right? That is true. All right. So tell me, would you walk me through, then, the elements and how you, what your theory is of a constructive trust traceable to the proceeds of the operation? I will. And I think probably your damages are not coextensive necessarily with a constructive trust. On behalf of the 25 named plaintiffs right now, the amount of damages are, there's no evidence of what, I don't know what those specific 25 plaintiffs have. But nor I think, I think it's a good time to point out that that whole, the argument that this preliminary injunction should only tie itself to the 25 people who by an accident right now are in the case, was for one, it was never raised, though they say it was raised below, it wasn't. I mean, we can look in the record. It really wasn't raised. And nor is it, in fact, the case. It's not the rule. The rule, the purported rule arises from this Zepeda case. And in Zepeda, they made a finding that there was no class certification. And all the other cases that rely on Zepeda have that same thing, that there is a finding of a denial of the certification motion. In this case, because of the PSLRA that has been in place, we have not yet moved for certification. Right. So how can you get a constructive trust imposed on behalf of people who aren't in the case yet? Well, in our, the letter that we, because the case law, Ninth Circuit case law, and there's a San Francisco case, Joyce, that says that until such time as the plaintiffs have moved for certification, it is proper, it is appropriate to treat the case as if it were a class action. That's what the Joyce case says. That's what the other cases cited in the book. Treat the class for purposes of being able to freeze assets? Yes. And the case, for example, the Zepeda case and the cases that it relies on talk about it being inappropriate to award damages, say, to a, on behalf of strangers to the litigation. But these 8,000 people or so, the putative members of the class, are hardly strangers to this lawsuit. The whole point of a preliminary injunction is to stop an injustice, to stop dissipation on their behalf. If we, nonetheless, even if we only limit it to the 25, the 25 plaintiffs have already, at the time of the order, there was $3 million in damages, and that number is increasing. And again, that is to be measured. But we're talking about $3 million in their damages, but what we're talking about here is your theory to place a trust on their commissions, right? Their commissions weren't, in other words, the $3 million that these people lost. Right. $3 million of that did not go into commissions. A smaller percentage, obviously, went into commissions. So you don't have the whole $3 million. We don't. That is correct. So we're talking about less than $3 million. We don't know how much that less is in this case, do we? We have no idea. So it could be $300,000. We have no idea. But I think in the sense that it, I don't want to say that question doesn't matter, but the reason that it doesn't matter is if you think about the focus of what the whole point of a preliminary injunction, the whole point of an asset freeze, is not just to save this small amount on behalf of a few people. It's to stop the dissipation. It's, it's, it, I don't think I should be embarrassed to say that I'm moving on behalf of these real, live victims. And I don't think the case law requires me to, to, to focus only on this note. Well, I don't think you should be embarrassed at all, but I don't think we should be embarrassed to rely on the law, apparently in this circuit, that you can't, you can't freeze for a, for a group of plaintiffs that haven't been certified. Well, the other question is the, the nature of the asset. So assuming what your opponent says is true, that they have real property that was purchased prior to any of this, why is that the appropriate focus of a constructive trust? Because, and the, the court, the district court makes this, I think, clear in his order, that we know they received the, the $22 million over the course of the years. We don't know what they bought. We know they have some real properties, some there's evidence maybe they were purchased earlier, but it's hardly a stretch to assume that they've been paying mortgages, et cetera, maintaining those houses and keeping the money that they do have with money that was taken from these commissions. That's, you know, as they call it, hardly a stretch. Of course that happened. Of course everything they have is traceable in that sense to this bad money. So what's the state of the record on that? I mean, I don't see anything, that's just speculation. Maybe it's reasonable speculation, but. It is, well, I think it's, it's, it's a reasonable inference more than speculation that people who have homes pay for it with money that they have. But, but you don't know that. You don't know whether it was a cash transaction or a mortgage transaction, do you? I don't know the state of, of that. But that, that fact alone points to, you know, there's two dancers and there's two people in this game. The, the Suzuki's are part of this lawsuit. They were involved. It would not, if, look, their point is, you know, there's a point, there's a rule of law that says if your damages are likely to be $25,000, it would be crazy to, to freeze millions and millions. Okay, fine, that is the rule. But isn't it incumbent upon them at some point to say, hey, you're freezing too much money. You're freezing too much assets. I think that's what they're saying today. But they, they don't make evidence of it. They say, we're not going to tell you what our, what our assets are, but maybe you're freezing too much. Maybe in the real world where there's real victims here, it is not enough to cut it. And because there, and, and it's more than speculation, I think. I think it's a reasonable inference that people who have received that many millions of dollars in the past five years have been using it to maintain their properties.  That's not much of a stretch. I mean, I guess I can't point to evidence saying this is the payment they made on that mortgage. But I can point to what human beings do. What if, what if we were to hold the injunction in place, but remand to the district court to have an evidentiary hearing or permit discovery on the issue that you need? So again, keep the assets frozen for a short period of time. Right. Or permit you to take depositions or whatever it is that you want to do to answer those questions. And then the district court would either go back to the findings it made previously or issue new findings. I would obviously survive with that. I think my response to that is that it's wholly, it is an unnecessary step given the state of the law, given the, the deferential standard of review that we have here. And there's no rule of law that requires that. But I mean, obviously, I would survive with that. It would. Well, I would think you would like the opportunity to depose the Suzukis on what happened. I would like. I've been, you know, chomping at the bits too, to tell you the truth. But, and I've been, my hands have been tied because of the discovery state that's been in place. And it's still in place. Any further questions? Okay. Thank you. Thank you very much.  Thank you. Just a few brief points, specifically with regard to Your Honor's last question to counsel about the opportunity to conduct discovery about the assets. I go back to my point that I think it is the, I don't think, it is the plaintiff's burden to establish the extent of the constructive trust on which the asset freeze should be based. So why not have an evidentiary hearing? Well, there should be an evidentiary hearing on the extent of the trust. And yes, and yes. I mean, we're, we're, we're. You can't hide. You know, you. Go ahead. Nine innings in a ballgame, you can't say odd innings don't count. Totally understand. But the scope of discovery necessary to determine whether enough assets are present to satisfy a constructive trust claim may expand or contract, depending on the size of the constructive trust. If the amount at issue is, to take an extreme example, $50,000, well, then we can put $50,000 in an account, have it be frozen, and we're done. If the amount at issue that's subject to the constructive trust is $22 million, well, that's a different, that's a different amount of discovery. So I only. Well, certainly, but we're sitting here today without the benefit of any, anything in the record that would aid us on either of your causes except for assertions. You're right, Your Honor. And it was plaintiff's burden to provide that evidence to establish the size of the constructive trust. We do, we do know there's been dissipation. I mean, I think that's pretty well established. So, so that you, they persuaded the district court that there was dissipation and likelihood of further dissipation. So we start with that. Well, some of that dissipation, Your Honor, related to assets that were obviously outside the trust, namely, for example, the 1987 real property. So it's incumbent upon the district court to first determine the extent of the constructive trust and then determine whether there are assets sufficiently frozen to satisfy that judgment. I just wanted to touch briefly on counsel's reference to cases purportedly standing for the proposition that you can freeze assets on behalf of members of an as-yet-unestablished class. The cases cited in their supplemental authorities do not stand for that proposition. They're non-precedential and did not involve asset freezes. So in some, Your Honors, the district court erred in at least three reversible ways. It froze assets without regard to whether it was necessary to satisfy the constructive trust claim. The order froze assets without regard to whether they were necessary for satisfying the equitable claims of these 25 plaintiffs. And it froze assets without regard to whether they were acquired after the point in time, April of 2012, that the district court contended the Suzuki's had actual or constructive notice of the underlying fraud. For these reasons, the Suzuki's respectfully request that the district court's preliminary injunction order be reversed as an abuse of discretion. Thank you, counsel. Thank you. The case is heard. It will be submitted for decision. Thank you both for your arguments.
judges: Thomas, Benavides, Owens